ALICE M. MANWARING *vs.* LIGGETT DRUG COMPANY, INC.

MAY 10, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.    This action of trespass on the case for negligence was tried by a jury in the superior court and resulted in a verdict for the plaintiff for $750. The defendant's mo-

tion for a new trial was granted by the trial justice. The case is before us solely on plaintiff's exception to this ruling.

The plaintiff claims that she was injured in the defendant's drug store at the southeast corner of Washington and Mathewson streets, in the city of Providence, between three and four o'clock in the afternoon of August 6, 1934. There is another drug store on the southwest corner of these streets which does not belong to the defendant. In substance, the testimony is as follows. The plaintiff, a woman about fifty years of age, after testifying rather positively that she went to the drug store at the southwest corner, finally corrected herself after repeated questioning by her counsel and said that she went to the defendant's drug store for an ice cream soda; that, having bought the soda, she went to sit at a table provided by the defendant for its customers, which table was separated from the cosmetic counter by an aisle, three or four feet wide; that she sat at the table at an angle, with her right foot extending somewhat into the aisle; that a girl employee of the defendant from behind the cosmetic counter was arranging some bottles on that counter, and that, while so engaged, she accidentally upset three pint bottles of bay rum; that these bottles fell from the counter towards the aisle, and that "all three bottles" hit her on the right ankle before striking and breaking on the floor.

She further testified that she "hollered Ow" when she was struck by the three bottles; that her "scream" brought the girl from in back of the cosmetic counter and the manager from the rear of the store to where she was sitting; that the former said to her: "I am sorry. Did it hurt you?", while the latter gave orders that the "necks of the bottles" be saved; that she was unable to get up and go on her way for about ten minutes; and that no damage was done to her stocking other than that it was wet from the contents of the bottles.

The plaintiff further testified that when she reached her home in Conimicut she was immediately assisted by one "Anna", whose last name she did not know; that Anna took

care of her during her total incapacity of six or seven weeks; that, as far as she knew, Anna was still living in Conimicut but that she had not tried to locate her; that on August 8, two days after the alleged accident, she called Dr. Frank R. Jenks of Conimicut, and that she was still under his care at the time of trial in June 1935.

It appears from the testimony of the plaintiff that she consulted her attorney in September 1934, and that, following his advice, she did not notify the defendant at any time of her accident. The action was started by writ dated January 16, 1935. When she was asked in cross-examination whether she had refused to be examined by a doctor for the defendant on two different occasions, the plaintiff answered that she did not know of any such requests. However, in the course of the trial the plaintiff was examined by Dr. William H. Palmer for the defendant in an anteroom of the courthouse.

Dr. Jenks, who was the only other witness for the plaintiff, testified that when he examined the plaintiff on August 8, 1934, her right ankle was greatly swollen, and there was a "puncture . . . so that the blood showed . . . just on the edge of the swelling on the outer side of the ankle"; that when he measured the plaintiff's ankles on June 5, 1935, the day before the trial of this case began in the superior court, he found that her right ankle measured two and one-half inches more than her left ankle; and that the injury to the right ankle would "need attention the rest of her life." On the other hand, Dr. Palmer, who examined the plaintiff on June 7, 1935, testified that he made an examination of the plaintiff's feet and ankles in the presence of Dr. Jenks, and found that her right ankle measured ten and three-quarters inches and her left ankle ten and one-half inches. This slight difference, he explained, was due to a "pronated" right foot, which is a natural weakness resembling what is commonly known as a "flat foot".

The defendant denied that any such accident as that claimed by the plaintiff happened in its store, and in support of its contention it produced as witnesses the manager and every girl employee who was connected in any way with its Mathewson street store at that time. It also produced its daily records of damaged goods, which are required to be kept in the regular course of its business, and they showed that on the day of the accident and for some days thereafter there was no report of any broken bottles.

Two days before the trial of this case in the superior court, the plaintiff, according to her own testimony, went with her counsel to the defendant's store, and she then pointed out to him the girl who she "thought was the clerk" involved in the accident. The plaintiff could not tell whether her counsel spoke to this girl or not as the plaintiff left immediately thereafter. This girl, who was one of the witnesses for the defendant, recalled the incident just mentioned, but testified that at the time of the alleged accident she was working in one of the defendant's stores in the city of Cranston. She was corroborated by the manager of that store, and their testimony on this point was confirmed by the pay roll records of the defendant.

The plaintiff complains to us that the trial justice, in granting the defendant's motion for a new trial, misconceived the evidence in certain respects and gave it undue importance in others. In *Wilcox* v. *Rhode Island Co.*, 29 R. I. 292, this court said that it is the duty of the trial justice to grant a new trial whenever, in his superior and more comprehensive judgment, it appears that the jury from any cause have failed to respond truly to the real merits of the controversy. This rule has been uniformly approved by us and we have repeatedly refused to disturb the decision of the trial justice on a motion for a new trial, unless we found, from our examination of the evidence, that his decision on the weight of the evidence was clearly wrong.

Our examination of the evidence in the instant case satisfies us that the trial justice did not misconceive the evidence, as the plaintiff contends, and that he was fully justified in granting the defendant's motion for a new trial on the ground that the verdict is against the weight of the evidence and does not do justice between the parties.

The plaintiff's exception is overruled, and the case is remitted to the superior court for a new trial.

*Carroll & Dwyer, Edward F. J. Dwyer,* for plaintiff.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for defendant.